Anne Marie McGINLEY–ELLIS
Appellant (Petitioner Below),

v.

Charles R. ELLIS, Appellee
(Respondent Below).

No. 49S02–9408–CV–783.

Supreme Court of Indiana.

Aug. 16, 1994.

Nancy L. Cross, Miroff, Cross, Ruppert & Klineman, Indianapolis, for appellant.

Bruce M. Pennamped, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

SHEPARD, Chief Justice.

The Court of Appeals purported to evaluate the trial court's fidelity to the Indiana Child Support Guidelines under the abuse of discretion standard. It thus contravened the rule announced in *Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, which requires appellate review under the clearly erroneous standard.

### I. Facts and Procedural History

Anne and Charles Ellis were married on July 26, 1985, and thereafter two children were born to the couple. Anne filed a petition for dissolution in November 1990, and the court entered a final decree on December 4, 1992. Pursuant to a motion by both parties under Trial Rule 52(A), the court entered findings of fact and conclusions of law.

Many of the issues raised before the trial court centered on Charles' relationship to and interest in his family's business, the Paint and Auto Supply Corporation (PASCO). PASCO was established by Charles' father and a partner in 1959; it sells automotive paint and painting supplies. At the time the parties married, Charles owned twenty-

two shares of PASCO stock. Subsequent gifts by Charles parents increased his holdings to 162 shares. On the date the petition for dissolution was filed, this represented a 65.6% ownership interest in PASCO. His father and a non-family member employee held the remaining 34.4% interest. In conjunction with his growing ownership interest, Charles assumed primary responsibility for the operations of the corporation in 1983 and he now serves as its president.

In setting child support, the trial court specially found that Charles is "employed as President of the Paint and Auto Supply Corp. ... of which corporation he is the majority stockholder," and that he "controls what his salary and total compensation will be." Finding of Fact 12. The court also found that Charles' present income consists of his salary from PASCO ($814 per week) plus "in kind" compensation, valued at $93.00 per week, derived from his use of a PASCO truck. This analysis translates into an annual income of $47,169 per year. Income in the amount of $230.77 per week was imputed to Anne, who had worked outside the home before the marriage but not since the birth of the Ellis' first child. Plugging these gross incomes into the guidelines, the trial court determined Charles' support obligation to be $200 per week. It also ordered Anne to execute IRS Form 8332 in order to waive dependency tax exemptions in favor of Charles "for all future years."

On review, the Court of Appeals expressed concern over the trial court's failure to include as income to Charles certain payments made by PASCO which reduced the business debt of a partnership in which Charles held a 50 percent interest. It also questioned whether interest free loans taken by Charles from PASCO ought not have been considered in calculating his support obligation. In light of these concerns, it reversed, holding that "the methodology employed by the trial court in calculating Charles income fails to comport with the methodology prescribed by Child Supp.G. 3.A.2 ... and constitutes an abuse of discretion." In re Marriage of Ellis, 622 N.E.2d 213, 220 (Ind.App.1993). While we agree that the trial court failed to employ the methodology prescribed by the Indiana Child Support Guidelines, we observe that the Court of Appeals used the wrong standard of review in arriving at its conclusion.

## II. Discussion

Shortly after the Child Support Guidelines became effective, this Court in Humphrey, 583 N.E.2d 133, considered the appropriate standard of appellate review of support orders. Earlier, in Marriage of Davidson (1989), Ind.App., 540 N.E.2d 641, it had been held that where a trial court is required to work from a presumptive result, there the "50–50" division of marital property, and to justify any deviations, it should be affirmed unless the court on appeal is persuaded that its determination is clearly erroneous. Id. at 645. Given the similarity of this approach to the child support framework, we chose to supplant the abuse of discretion standard which had traditionally governed trial court determinations of support obligations and use the clearly erroneous test instead. Humphrey, 583 N.E.2d at 134.

In this case, it may be that the Court of Appeals believed the abuse of discretion standard to be of continuing viability given that the calculations at issue were made under Guideline 3(A)(2), which presents certain "unique problems." Ind. Child Support Guideline 3, Commentary. That Guideline, inter alia, directs courts to "carefully review" the income and expenses of the self employed and to exclude expenses "determined ... to be inappropriate." While we agree that Guideline 3(A)(2) calls upon trial courts to exercise their sound judgment, as for example in determining whether an expense is "ordinary and necessary," see Merrill v. Merrill (1992), Ind.App., 587 N.E.2d 188, this does not necessitate departure from the clearly erroneous standard of review. As to this point, we reiterate our observation in Carr v. Carr (1992), Ind., 600 N.E.2d 943: "Although trial courts must have 'discretion to tailor a child support award to the circumstances,'" this discretion must be exercised

within the methodological framework established by the guidelines.

■ Typical formulations of the clearly erroneous test declare that a child support order will be affirmed unless it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Carr*, 600 N.E.2d at 945. Here, application of this standard is further controlled by the fact that the support ordered was contained in a judgment entered pursuant to Trial Rule 52. When the trial court finds the facts specially and states its conclusions thereon pursuant to Trial Rule 52, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses.

■ The purpose of special findings is to provide the parties and the reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved. *In re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171. Accordingly, courts reviewing support orders contained in judgments entered under T.R. 52 are not at liberty simply to determine whether the facts and circumstances contained in the record support the judgment. Rather the evidence must support the specific findings made by the court which in turn must support the judgment. *See Zakrowski v. Zakrowski* (1992), Ind.App., 594 N.E.2d 821. The effect of this distinction was correctly explained in *Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169, where it was observed that if the findings and conclusions entered by the court, even when construed most favorably toward the judgment, are clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision.

■ The trial court found that Charles' income stems from the operation of a business (PASCO) and that he "controls" what this compensation will be. Weekly gross income from "self-employment, operation of a business, rent, and royalties" must be calculated with reference to Guideline 3(A)(2), which defines such income as gross receipts minus ordinary and necessary expenses. This approach was adopted in recognition of the fact that the self-employed and those in analogous situations often have an ability to control the structure and amount of their own compensation. As a result, determining the profitability of the venture or operation paints a better picture of the spouse's financial wherewithal than would a mere toting up of any formal compensation or in-kind benefits. *See Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344. The wisdom of this approach is well demonstrated by this case.

In 1989, Charles drew a salary from PASCO in excess of $100,000. In 1990, the year the dissolution petition was filed, his taxable income decreased to $60,000. By 1991, his salary had dropped still further to $43,500. Anne claims that this drop occurred as Charles endeavored to shift his benefits from salary to other non-income forms. In particular, she argues that PASCO assumed Charles' personal indebtedness relative to the acquisition of a commercial building by a partnership in which he had a 50 percent stake. She also charges Charles with paying his personal expenses out of PASCO funds. Charles counters that his salary had dropped due to the poor economic circumstances of the corporation, that the payments on the commercial building were obligated by an "oral agreement" regarding tenancy, and that the personal expenses at issue were paid out of monies loaned by PASCO which would have to be repaid.

Despite the presence of these issues in the record and its own finding that Charles controlled his income, the trial court calculated Charles' weekly gross income, and hence his support obligation, by relying exclusively on the wages and tips he reported in his 1991 PASCO W–2 statement and the value of his company truck. In essence, as the Court of Appeals noted, the trial court's judgment treated Charles "as an employee of PASCO,

not the president/majority stockholder in complete control over his compensation as well as every other operational aspect of the business." *Ellis,* at 220. Having found that Charles derived income from self-employment or the operation of a business, the trial court's failure to calculate its value by determining PASCO's gross receipts minus ordinary and necessary business expenses was clearly erroneous.

### III. Conclusion

We vacate the child support order and remand with instructions to recalculate Charles' income. The opinion of the Court of Appeals is summarily affirmed in all other respects.

DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.